FILED
2005 May-02 PM 04:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JUDITH HYATT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) CASE NO.: CV-04-HS-3204-NE |
| v. | ) |
| | ) |
| **FPMI, INC., and** | ) |
| **STAR MOUNTAIN, INC,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OF OPINION

This cause comes before the court on the *Motion for Stay Pending Arbitration and for Order Compelling Arbitration of All Claims* (doc. 10), filed by the defendants FPMI, Inc. and Star Mountain, Inc. In the motion, the defendants seek an order staying the instant cause and compelling the plaintiff to arbitrate her claims under Title VII, 42 U.S.C.A. §§ 2000e *et seq.*, and 42 U.S.C.A. § 1981. The motion has been briefed by both sides and is ripe for decision.

## FACTS

On August 18, 2001, the plaintiff Judith Hyatt signed an employment agreement with FPMI Communications, Inc., entitled the "Consultant Employment Agreement." Hyatt was hired to assist in FPMI's effort to recruit airport personnel for the United States Department of Homeland Security. In January 2003, Hyatt

became a full-time employee of FPMI when she was appointed the director of defendants' newly created recruitment center in Arab, Alabama. When she assumed the new position, plaintiff did not sign a new employment agreement.

On September 5, 2003, plaintiff resigned under conditions that she claims amounts to a constructive discharge. She alleges that her discharge and other adverse acts were taken in retaliation to her complaints that FPMI was not recruiting African-Americans for positions in Arab, Alabama.

On the instant motion, Star Mountain, Inc., the corporate successor to FPMI, argues that the plaintiff's claims are subject to arbitration under the agreement that the plaintiff signed with FPMI on August 18, 2001.

Section 14 of the Agreement provides as follows:

> 14. <u>Disputes.</u>  Any controversy or claim arising out of this agreement shall be settled by arbitration in accordance with the rules then in force of the American Arbitration Association, and judgment on the award may be entered in the highest court of the forum having jurisdiction. Arbitration shall be held in the City of Huntsville, State of Alabama, unless otherwise agreed to by the parties. The parties shall each bear their own costs and attorneys [sic] fees for the arbitration of any dispute.

(Doc. 10, ex. A ("Consultant Employment Agreement") ¶ 14.)

The defendants argue that the agreement is enforceable under sections 3 and 4 of the Federal Arbitration Act ("FAA"). *See* 9 U.S.C.A. § 3. The plaintiff argues that (1) the agreement is inapplicable to the claims asserted in this cause, (2) the

arbitration clause is void as a violation of public policy, and (3) the arbitration clause is void under contract principles of fraud, duress, and unconscionability. (Doc. 12.)

## ANALYSIS

The FAA pronounces a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Anders v. Hometown Mortg. Servs.*, 346 F.3d 1024, 1029 (11th Cir. 2003) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)). Arbitration agreements act as "forum selection clauses." *Id.* "A party agreeing to arbitrate statutory claims 'does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral rather than a judicial forum.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)).

Plaintiff's first argument against enforcing the arbitration provision is that the arbitration clause in the Consultant Employment Agreement does not apply to the instant claims. The claims she asserts in this cause, plaintiff argues, did not arise out of the Consultant Employment Agreement, but rather arose out of a subsequent employment relationship between FPMI and plaintiff established in January 2003. Plaintiff contends that the Consultant Employment Agreement concluded on November 27, 2002. (Doc. 12, ex. A ("Affidavit of Judith Hyatt").)

The question posed by Hyatt's argument is whether the Consultant Employment Agreement remained in effect after January 2003 when Hyatt became a full-time employee. The question turns on an interpretation of a number of provisions of the Consultant Employment Agreement itself. For instance, this question may depend on whether plaintiff's full-time employment complied with paragraph 1 of Agreement, which requires that a "separate Task Agreement shall be signed between FPMI and Employee" "[f]or each project on which Employee is engaged…." Or it may depend on paragraph 11, which sets out how the Consultant Employment Agreement is to be terminated. Regardless of which provision determines the issue, the conclusion plainly is obtained that the Agreement governs whether these claims are subject to the arbitration clause. That conclusion, in turn, places the question of arbitrability squarely within the scope of the arbitration clause, for the question of whether the Agreement covered Hyatt during her period as a full-time employee is itself a "controvery . . . arising out of this agreement …." (Doc. 10, ex. A ¶ 14.)

Furthermore, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H.*

*Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). Applying this principle, the court must resolve in favor of arbitration any questions created by the plaintiff's argument . Under the Consultant Employment Agreement, it is for the arbitrator to determine, in the first instance, whether the plaintiff's claims are covered by paragraph 14 of the Agreement. If the arbitrator answers that question in the negative, the plaintiff will be free to proceed before this court.

Plaintiff's second argument is that the arbitration clause violates public policy because it provides that "[t]he parties shall each bear their own costs and attorneys [sic] fees for the arbitration of any dispute." (Doc. 10, ex. A ¶ 14.) The plaintiff relies on *Paladino v. Avnet Computer Technologies*, 134 F.3d 1054, 1062 (11th Cir. 1998), in which the Eleventh Circuit adopted the principle that "[w]hen an arbitration clause has provisions that defeat the remedial purpose of the statute [Title VII], the arbitration clause is not enforceable."[1] In *Paladino*, the Eleventh Circuit held that an arbitration clause was unenforceable based upon two reasons: (1) because the clause limited a plaintiff's remedies to contract remedies, thereby excluding Title VII damages;  and (2) because it required an employee to pay "the hefty cost of

---

[1] The Eleventh Circuit has clarified that the opinion of Judges Cox and Tjoflat was the opinion of the court in *Paladino*, even though it follows the opinion of the Chief Judge Hatchett. *See Anders v. Hometown Mortg. Servs.*, 346 F.3d 1024, 1031 n.6 (11th Cir. 2003).

arbitration." *Id.*[2]

*Paladino* is similar to the instant case in that both involve an arbitration clause requiring arbitration under the American Arbitration Association ("AAA") where the AAA's filing fees will fall on the employee-plaintiff. If *Paladino* was the sole Eleventh Circuit case on the issue, the court likely would be obligated to follow its reasoning and decline to enforce the arbitration clause. However, subsequent Eleventh Circuit cases have narrowed *Paladino*'s holding. In *Anders v. Hometown Mortgage Services, Inc.*, 346 F.3d 1024, 1031-32 (11th Cir. 2003), the Eleventh Circuit interpreted *Paladino* to apply only in cases where provisions that restrict an employee's rights under Title VII are not severable from the remainder of the arbitration clause. Where the suspect provisions are potentially severable, *Anders* instructs that "an arbitrator and not a court should decide the validity of the remedial restriction provisions." *Id.* at 1032.

Thus, under *Anders*, the threshold question for the court to decide is whether the possibly unenforceable provision is severable from the remainder of the arbitration clause. If so, then the court must let the arbitrator determine whether the

---

[2]The Eleventh Circuit reasoned as follows: "Because [the employer] makes no promises to pay for an arbitrator, employees may be liable for at least half the hefty cost of an arbitration and must, according to American Arbitration Association rules the clause explicitly adopts, pay steep filing fees (in this case $2000).… We consider costs of this magnitude a legitimate basis for a conclusion that the clause does not comport with statutory policy." *Paladino*, 134 F.3d at 1062.

provision is indeed an unenforceable abrogation of the remedial purposes of Title VII.

The Consultant Employment Agreement is governed by Alabama law. (*See* doc. 10, ex. A ¶ 13.) Alabama law favors severability. *See Anders*, 346 F.3d at 1032 (citing *Ex parte Thicklin*, 824 So. 2d 723 (Ala. 2003) and *Ex parte Celtric Life Ins. Co.*, 834 So. 3d 766 (Ala. 2002)). Furthermore, the Consultant Employment Agreement contains a severability clause that provides that "each of the provisions of this agreement is independent and severable, and that each shall remain in full force and effect regardless of the enforceability of any other provision …." (Doc. 10, ex. A ¶ 10.) Based upon Alabama law and the specific contract provision, the court finds that the final sentence of paragraph 14, which provides that "[t]he parties shall each bear their own costs and attorneys [sic] fees for the abitration of any dispute[,]" is severable from the remainder of the arbitration clause. Accordingly, under the Eleventh Circuit's instruction in *Anders*, the arbitrator, and not the court, must determine whether the final sentence of paragraph 14 of the Agreement is an unenforceable diminution of Title VII's remedial scheme.

Plaintiff's third argument is that the arbitration clause is "oppressive and one-sided and therefore unconscionable." The argument is devoid of merit. The arbitration clause merely applies the rules and procedures of the American Arbitration Association. The rules of that Association are not so unreasonable that all arbitration

agreements under them are unconscionable.  Indeed, the only specific complaint that the plaintiff makes about the arbitration clause is that it derogates from Title VII, which already has been addressed.  Moreover, plaintiff has failed to adduce any evidence raising a significant issue as to whether the arbitration clause was fraudulently induced or that it is unconscionable.[3]  Indeed, plaintiff has not made a serious effort to argue that either fraudulent inducement or unconscionability is stated under these facts.

## **CONCLUSION**

This matter is subject to arbitration under paragraph 14 of the Consultant Employment Agreement and pursuant to sections 3 and 4 of the FAA.  The motion to stay this action pending arbitration and the motion to compel arbitration shall be granted.  The arbitrator is to determine whether plaintiff's claims are within the scope

---

[3] Alabama courts use the following four factors to determine whether a contract or contract provision is unconscionable: (1) whether there is an absence of meaningful choice on one party's part; (2) whether the contractual terms are unreasonably favorable to one party; (3) whether there was unequal bargaining power among the parties; and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract.  *See Rollins, Inc. v. Foster*, 991 F. Supp. 1426, 1434 (M.D.Ala.1998).  A finding of fraud under Alabama law requires a claimant to establish the following elements: (1) a misrepresentation or suppression of a material fact; (2) made willfully to deceive, or recklessly without knowledge; (3) which was justifiably relied upon, under the circumstances; and (4) which caused damage as a proximate consequence. *Id.* at 1433.  Plaintiff has failed to provide any evidence that AAA rules "unreasonably favor[]" Star Mountain, nor has plaintiff even alleged any misstatement of fact.

of paragraph 14 and whether the final sentence of paragraph 14 is enforceable. A separate order will be entered.

    **DONE** and **ORDERED** this 2nd day of May, 2005.

                                      **VIRGINIA EMERSON HOPKINS**
                                      United States District Judge